Good morning, Your Honors. My name is Jeff Daniels from the Office of the Federal Defender representing the appellant. If you could speak up a little bit, I'd appreciate it. Larry Campbell. Sorry. That's all right. There are three arguments in the brief. I only intend to spend a moment on the second and third unless there are questions. The last argument is a sentencing guideline issue, and it's whether, in this case, the judge increased the guideline level on account of five firearms which were not charged in the indictment. They were, and the question is whether Mr. Campbell possessed them. The argument is that if he did not possess them, they were not involved in the offense and should not have been counted. Those firearms were found at Mr. Campbell's uncle's house in Lincoln, California, approximately 15 miles from Mr. Campbell's house, in a lock shed, for which Mr. Campbell did not have the key, in a gun safe. In a gun safe, for which he did have the combination, and it was his uncle. The argument is that while there was evidence that he had the power to control those firearms, had he chosen to, given his relationship with his uncle, there was absolutely no evidence that he intended to do so. And on that basis, the argument is he didn't possess them and they should not have been counted. The second argument has to do with my request below, which was denied to collaterally attack the validity of the state court order which underlies this federal prosecution. Before this panel, I'm blown away on the due process argument by the decision of a prior panel in this court, United States v. Young, which is cited in the government's The contention is that I should have been allowed to collaterally attack it, because as of the time Mr. Campbell was indicted, California law, under the case of Ritchie v. Conrad, already said that the procedures used in this case were inadequate to justify the issuance of an order. Ritchie held that if there was an objection to entry of an order, there had to be a reason for it to be issued. Kennedy, what would you hope to show in your collateral attack? Well, that the declarations issued in support of the extension request had conclusory allegations with no facts, and he had a chance to appeal that order, right? He did. And he did not do so. He did. If there was some, you know, something wrong with the underlying process, his remedy would be to appeal that order. Isn't that the remedy for that? That's the standard remedy. And the reason — but nevertheless, my contention is that before it can be used to convict him of a Federal crime, that he ought to be able to challenge its validity in the Federal prosecution. I'm not trying to undo the restriction on guns or whatever process the State might follow up on, but I don't think it should have been used to aggravate a Federal crime if it was invalid. But it was known to be, under the Ritchie case, at the time of this indictment, all I would have had to show was the transcript of the hearing, the holding in Ritchie v. Conrad, and the absence of any factual allegations in the pleadings of the — on behalf of his ex-wife. Well, what I'm getting at is all that showing, even if, we'll say, it amounts to some sort of defect, is futile because you have this other avenue of attack you should have taken, namely the appeal. Well, I agree. So what is the prejudice to you? I missed the last part, Your Honor. What is the prejudice to you from not being able to collaterally attack the order? Because there's no — because you couldn't show it was defective. Well, I think I could show it was defective because the order, the State court order, had the magic words that fit the second part of the Federal statute. It explicitly prohibited assaultive behavior. But there was no finding that he had ever committed any assaultive behavior. Mixed in with the allegations were claims that he was harassing her lawyer by faxing her several times a day or week. You know, so there was harassing conduct. The order swept assaultive and harassing stuff into the same kind of order. In fact, the amended orders, which are in the excerpts, as this hearing was in December, as of January, California fixed that problem by changing the form. So, anyway, that's the argument on that. With respect to the Commerce Clause argument, the claim is that the government charged and proved both a wrong and an inadequate Commerce Clause element by charging in the indictment that Mr. Campbell possessed inter-effecting commerce in that it had — the weapon formally had been shipped in interstate commerce. All they proved was that it was manufactured elsewhere, brought to California. There was, in the evidence, a printout which consisted of a listing of dealers' reports of sale, which showed the acquisition of 10 or 11 firearms, the most recent of which was in 1991, early 1992, and the indictment charges behavior in 2004. Can we come back to your first point on possession? Oh, sure. Is there any argument that had he gone to the uncle and said, I need to get physical possession of my guns, that the uncle would have resisted in any way? There's no evidence one way or the other. And tell me exactly how it happened when the weapons were recovered. Who was there? Who had the combination to the safe and so on? Police went to Mr. Campbell's house in Roseville with a search warrant and searched it. They found actually three weapons. One was an antique and was dismissed. They had this list of the extra firearms. They asked him where they were. And he said they were at his uncle's house in Lincoln. And how far away is Lincoln? It's approximately 15 miles from Roseville. Fifteen miles. Okay. Right. That's a guesstimate. They then drove him to his uncle's house. His uncle was there. They told him what happened is actually in the transcript of the motion to suppress, which is not an issue here. But they told him that they had to search for firearms or they had to get them. The uncle retrieved a key from inside his house, which is for a shed, which is an outbuilding. They unlocked it with that key. One of the officers attempted to open the safe with the combination and couldn't do it. Mr. Campbell then opened it. Had Mr. Campbell given the officer the combination, but the officer just couldn't do it? I don't recall whether Mr. Campbell or somebody gave him the combination. But in any event, it was Mr. Campbell himself who eventually opened the safe with the combination. That's correct. I'm sorry. This was in a what? A separate building from the house? Separate town. No, no. A separate building from the uncle's house, yes. And it was locked, right? The outer door was locked. And the uncle had the key? In his house, yes. Campbell, no, I mean to this building. Right. Mr. Campbell did not have a key to that building. Didn't have a key to the building? No. But. So he asked his uncle for the key. Or he asked his uncle to open it. Well, no. The police told the uncle, we have to seize the weapons. The uncle got the key. And opened the door to the building? Yes. Well, I don't know who opened the door. The uncle's in his late 80s. Let's look at it as a constructive possession because there was no evidence that the defendant didn't have complete control of the guns any time he asked for it. But the burden was on the prosecution to prove that increase in the guidelines. And there was no evidence that he did. In Casteline, for example, which is cited for other purposes, this Court distinguished between ownership. The judge actually made a finding when he said what he said was all he had to do was ask for it. Well, that's true. He was making a finding for which there was no evidence to support. No. There was evidence from which one could infer that the uncle would have done it. But there was no question that he actually did. Well, if the answer is all you have to do is ask for it, how does that destroy the possession in the defendant? He didn't have the intention to control it, which is part of the definition of possession. Well, if I move from my farm where I keep a horse to an apartment in town and I let my son-in-law have the key to the barn because he's going to live on the farm, it's still my horse, isn't it? It's still on it. It's still on it. If I ask for the key, I can get the horse any time I go out there and ask for the key. Well, presumably, but in some circumstances, it may take evidence to show that that was your state of mind or that was the understanding between you. And possession and ownership are two different concepts. They are. That's correct. And that's laid out in Casterline on a different subject. Do you have a case that helps you that says, you know, he doesn't have physical possession, but he's got constructive possession? Do you have a case whose facts are helpful to you? U.S. v. Casterline is a case where a guy wrote from prison talking to somebody about his guns. He was charged with possession on or about the time he wrote the letter. It turned out he'd been in prison for seven months. And the argument the government made in that case was that ownership was all they had to prove and you could infer possession from that and from the letter. And this Court said, no, you can't. Yeah, that's not very close because the guy can't get at him, meaning he can't get his hands on him until he gets out of prison. Well, no, that's true. And I guess the guns were also in the custody of the sheriff. So we're here. They were not. Why don't we hear from the government and we'll give you a chance to respond. May it please the Court. Michael Beckwith on behalf of the United States. Your Honors, this Court has clearly considered and rejected the first two arguments that the defendant raised in his briefs. With Jones and with Young, this Court has clearly considered and with its rejection has pre- or actually set aside the possibility of reconsidering the argument that the defendant made in his briefs. Those arguments. 922G has been upheld in several cases and this Court's precedent as being constitutional and specifically with Jones, this Court upheld 922G-8 as a constitutional act of Congress's Commerce Clause powers. Now, with regard to the defendant's arguments about the collateral attack, as you mentioned, the case Young really preempts or just excludes the possibility that they can even collaterally attack. This Court's held that they can do that. Now, to move on quickly and address, I think, the heart of the Court's concerns with regard to the possession issue. Your Honors, in this case, the Court made a very clear finding with regard to constructive possession and joint possession that was based on several facts. Did you say that the district court made a finding? Yes, Your Honor. And what's that finding? That the defendant did in fact possess the weapons that he was storing at his uncle's house. And that was – did he articulate the basis for the finding? I will, Your Honor. I mean, the judge – did the judge articulate the basis for that finding? There's an extended oral argument, Your Honor, that many of these bases were considered. I mean, but in making the finding, he said I find that the defendant had possession of these other guns, right? Yes, Your Honor. And did he articulate a basis for that finding? Your Honor, he did not articulate every single basis, but his whole argument was after an extended oral argument which discussed each of these bases. Can you put my nose in the actual language that the district court used? Page 226 of the excerpt of the district court used the analogy of a safe deposit in the bank where you go ask the banker to let you in. Yes, Your Honor. And that was – that was the point I was getting ready to make, in that in the analogy that the court discussed, he raised – the judge raised the analogy of the safety deposit box and that someone can still have control and possession of a safety deposit box even though they have to go to another person, a third party, to gain access. And so that even though a key has to be shared or permission, for example, has to be given. I understand the hypothetical, but do you have a case that gets constructive possession as far away physically from this person as this was? Well, Your Honor, I don't think that the distance has anything to do with the possession. What if his uncle lived in China and he lived in California? Would that be constructive possession? Your Honor, arguably it would still allow for it if he had the intention and the power to control and exercise dominion over those objects. But at some point you're moving off into mere ownership. And obviously the statute is concerned and the guidelines are concerned with ability to have in physical possessions at one point or another such as to threaten the wife. So I don't think I would be willing to go so far as to say constructive possession includes a gun that I own in China that if I travel to China I have the right to pick up. So I suspect at some point – now, 15 miles is not China. Indeed, Your Honor. And the facts in this case certainly are very different from your post-hypothetical. In this case it's only 15 or 20 miles. And when the defendant was first encountered at his home, he mentioned to law enforcement officers that I have other weapons at my uncle's home. He then led law enforcement to his uncle's home. He then received permission or actually just asked his uncle to go into the shed that housed the safe. And then when he actually opened up the safe – Let me come back to my question. And I think I know the answer. And I think the answer is no. Do you have anything besides perfectly sensible hypothetical? But do you have a case that tells us that at some physical distance away held by somebody else who has the key who's willing to give it to you – do you have an analogous case that says that's constructive possession within the meaning of the  Off the top of my head, Your Honor, no. Not on point. Well, I assume off the top of your head means you've done some research and you can't find it. Your Honor, the – Is that right? Yes, Your Honor. The court's precedent, however, in this area is very clear that as long as someone has the power and the intention to control and dominate that item, possession can be found. And certainly in this case – No, but you see, maybe that law is good. I don't know if the facts are so clearly fitted. In other words, the uncle had the key to the building. The defendant didn't have the key. That takes away an element of control, right? He couldn't get possession unless the uncle said, yes, I'll let you into the building. Is that right? Yes. Your Honor, that's true. But the facts in this case are such that the defendant simply walked up to the uncle and said, hey, you know, they're here. It's okay. Can we move into the back? And the uncle – I know that. But the uncle has the power to say yes or no. Well, then, Your Honor, it would simply be like the lockbox analogy where – No. Like, for instance, you see, here are some cases that have to do with drugs. U.S. v. Medrano holds that where somebody puts drugs into the trunk of the car and keeps the key to the trunk, the driver doesn't have possession. How do you square that with this case? Well, I think the facts are slightly different, Your Honor, that the – in this case, the evidence is such that the defendant did have access to the room within which the safe was in by simply asking. And there's no evidence that – there's no evidence whatsoever that the uncle – There's no evidence either way. No, no, no, Your Honor. There is, actually. I mean, in this case, we actually have a situation where the defendant went to his uncle and asked permission to go in. The uncle gave him permission. So we have an example where permission was, in fact, granted. We have no evidence the other way saying that the – we have no evidence whatsoever saying that the uncle would not grant him that permission. And frankly, the fact that he has access to that safe has the combination. And then when he opens the safe, there are 50 – around 50 weapons in that safe, and the defendant takes his time to personally identify which weapons are his and which weapons are not his for law enforcement. So given the fact that he says my weapons are kept, other weapons that I have are kept at his uncle's house, the fact that he takes law enforcement to his uncle's house, the fact that he gives law enforcement the combination to that lock, and then  the fact that he has the ability to control those weapons. Kennedy. Under your theory of the case, let's assume that we have a valid order against someone like Mr. Campbell that says you cannot possess weapons. Mr. Campbell owns weapons. He does not want to give up the ownership, but he also wishes to comply with the order. You're now his lawyer. What do you tell him to do? Is it not enough to give them to his uncle and say, tell your uncle to put it in a  Well, certainly that would be in violation of the order. But I think the order Well, why is that in violation of the order? Because giving it to his uncle and saying, uncle, you keep these weapons for me and you have the key to that because while I can own them, I can't possess them, so you do that for me. Would you please? Would that be constructive possession on his part? Well, Your Honor, as you know, there's a distinction between the possession and ownership elements. But I think the order in this case specifically said he had to relinquish not just possession but actually ownership. That was the order in this case. Where is the order to say you can't own weapons? Yeah, but that's not the basis for the enhancement, right? No, Your Honor. Of course not. The basis for the enhancement is the fact that he possessed the weapons. Oh, I see. It has to be possession. I'm not sure. So the order may or may not say it, but we're okay. Yes, Your Honor. But it's simply the only issue here is possession. And two weapons. Of course, for the enhancement, he only needs three weapons to have the plus-two level enhancement. Two of those weapons were found in his possession at his residence, and then five more were recovered. And I think an important note also with regard to the possession element is that, you know, there's a Federal law enforcement printout discussing ownership, and three of those weapons were actually found in the safe at his uncle's house. And so even ---- I think we're sliding a little bit away from my question. Oh, I'm sorry. I guess you're saying that if he wants to comply with the guidelines and not possess them, it's simply not enough for him to say, listen, I don't want physically to possess them. I would prefer to give them to my uncle, whom I trust. I'll put them in a cabinet or a shed to which only he has the key. And I, therefore, think I do not possess them. You're saying, no, sorry, that's not ---- you didn't do enough. You still possess them. You're ---- that's a fair point, Your Honor. But I think the facts in this case are a bit different because the possession is defined as the power and dominion to control. If he were to give up that power and dominion, for example, if he had no access, then if he had no ability to control, then, you know, then possession would be more of an issue here. But here he has that ability because he has the ability simply to go drive 15 miles up the street and get those weapons out of the safe that he has the combination to. And so his ---- the fact that he has the power to control those weapons and the ability just to go get them is certainly what ---- And in your view, there's enough evidence from which the judge can confer ---- can infer that the uncle will give it to him anytime he asks from what happened when he and the police went out to the ---- to see the uncle? Yes, Your Honor. And the fact that there's no evidence ---- there's no evidence to the contrary. There's no evidence that the uncle wouldn't give him up. And, in fact, I think one of the issues that was raised during the oral argument which the judge considered was the fact that this is simply a way to keep his weapons  And I assume the only thing the judge has to do here for the enhancement is to find the ponderance? Yes, Your Honor. By the way, there was a suppression order in this case, right? Yes, Your Honor. Were these the guns that were suppressed? Yes. What was the basis of the suppression order? Actually, it was a consent issue, Your Honor. A what issue? A consent issue. Whose consent? The property owner's consent. There was a search warrant that was issued but did not include this area, so it was a consent issue. Right. So if the owner didn't consent to the search, no one can go on there and seize those weapons, right? Well, Your Honor, I believe it was found ---- I believe the weapons were suppressed on a technicality and the possibility, because it was unclear, that the owner may or may not have consented. But as we look at the facts in this case and we look at the testimony that came out Let's say it was a suppression order. The reason the guns were suppressed is because there was no consent to the search, right? Is that right? Yes, Your Honor. All right. So the property owner, the uncle, has to consent for somebody to go in and get those weapons, right? Yes, he would. Now, isn't that an element of control? If you can't get onto the property to get the guns, you don't have control? Well, no, Your Honor. I think if I understand your question, I think we're discussing two different issues. One is the legal issue of the validity of the seizure. The other issue is whether or not ---- I know that, but they come down to the same legal point. In other words, consent to enter the property. You can't have possession of the weapons if you can't go on the property to grab  Oh, I see what you're getting at, I think. Well, the issue here was, I mean, the uncle did not deny, didn't say no. There was just ---- No, but he had the power to say no. He certainly did, but he did not in this case. He said, yes, come on. But it's still in the control of some other person, you see. In other words, every time I want to get my pen, I have to ask somebody, well, can I touch my pen? I really don't have full control over it, do I? But if that person, if you have a practice ---- Well, I don't think it's that. In this case, the facts were not so strict. In this case, he ---- all the evidence indicates that he could, at any time, go and get the key from his uncle or just have his uncle open the shed. And then he, with his knowledge of the combination and the weapons, could go get the weapons. So. All right. Your Honor, if you have no further questions, we'll submit on the briefing, and we'd ask that you would uphold both the conviction and the sentence in this case. Thank you for your time. Your Honor, may I correct two factual inaccuracies? No, please. We'll give you a minute. The motion to suppress was a consent issue, and it was decided in Mr. Campbell's favor because one of the police officers who came there said, testified that he told the uncle, we've got to seize those guns, which eliminated consent from the uncle. The judge made a finding that Mr. Campbell, who is otherwise, you may have seen, was a vexatious litigant. Mr. Campbell would not consent to anything that was not in his own best interest. He made that finding at the motion to suppress. So, it's not true that Mr. Campbell had anything to do with showing an intent to control by going there and voluntarily getting the key or getting into the building. With respect to your question about compliance with the order, the state court order has a specific provision, which is included, among other places, on page 13 of my excerpts, that says that divestment has to either by sale to a licensed firearm dealer or turn in to the police, which is why he would be in contempt of the order by giving him to his uncle. But I think that doesn't establish whether he has possession. If he gives it, if he divests himself of possession anywhere but those two means, he is in violation of the order. But that's not, what's at stake in terms of this enhancement from having to, having Well, the guidelines were 24 to 30 months, and the judge sentenced to 24 months with a Booker analysis. It would be 18 to 24. Otherwise, since he's at the bottom, he might have gone lower. So the judge could have given the same sentence. But at the maximum difference, it's likely to be six months. If I prevail there, his sentence would be at the top of the new range rather than the bottom of the old range. And if the judge went to the bottom of the new range, he'd get six months off the same. He might. He might not, though, because he did a Booker analysis and decided two years is fair. And we judge the accuracy of the district judge's finding that he had access through the uncle on what, clear error? It would be clear error, but the error would appear on the face of the record if there were no evidence to support the finding of intent to control. Thank you. Useful argument from both sides. United States v. Campbell is now submitted for decision.
judges: Goodwin, Tashima, W. Fletcher